

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 16, 2016

**BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States* v. *Nico Burrell* et al.,
             S2 15 Cr. 95 (AJN)

Dear Judge Nathan:

      The Government respectfully submits this letter in connection with the sentencing of defendant Daquan Reid, a/k/a "DQ." At a sentencing proceeding on December 2, 2016, the Court inquired of the Government whether it intended to prove that Reid participated in a conspiracy with Nico Burrell, a/k/a "Zico Nico," to engage in a shooting in retaliation for the August 7, 2012 shooting of Burrell's sister, Michelle Jemison, a/k/a "Pebbles."

      The Government has continued to investigate the circumstances of the shooting of Jemison, as well as the conversation in which Burrell proposed, and Reid agreed, to commit violence in retaliation. Based on that investigation and for the reasons described below, the Government does not believe that the conversation between Burrell and Reid is material to Reid's sentencing and does not seek for the Court to rely on that conversation in sentencing Reid. Accordingly, the Government does not believe that a *Fatico* hearing is necessary. *See United States* v. *Fatico*, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979) (noting that it would not be "an abuse of discretion on the part of a district judge to hold . . . a hearing where there is reason to question the reliability of material facts having in the judge's view direct bearing on the sentence to be imposed, especially where those facts are essentially hearsay").

      I.    **Factual Background**

      If called, a cooperating witness ("CW-1") is expected to testify that in or about 2014, Reid, Burrell, and another person ("CW-2")[1] participated in a conversation inside the residence

---

[1] CW-2 is proffering with the Government in hopes of entering into a cooperation agreement. CW-2 was recently asked about the conversation between Burrell and Reid, and, while CW-2 did not remember it, CW-2 stated that it was common for Burrell to be inside the 226th Street House during the relevant time. Additionally, CW-2 stated that it was CW-2's opinion that Burrell would not talk to Reid about who shot Jemison because Burrell did not like Reid, who was formerly a

on 226th Street in the Bronx, New York, where Reid sold narcotics (the "226th Street House"). CW-1 would testify that Burrell said, in sum and substance, that he had identified who was responsible for shooting Jemison, that he knew the location where those individuals were, and that he wanted to go to that location.  CW-1 would testify that Reid verbally agreed.  CW-1 would further testify that CW-1 understood, based on CW-1's prior experiences with Burrell, that when Burrell proposed going to the location, he meant that he wanted to shoot at the individuals responsible for shooting Jemison.

To prepare for CW-1's possible testimony at a *Fatico* hearing with respect to Reid, the Government recently met with CW-1, who recalled an additional conversation.  CW-1 stated, in sum and substance, that shortly after the conversation among Reid, Burrell, and CW-2, CW-1 spoke to Reid and CW-2—without Burrell being present—and encouraged Reid and CW-2 not to engage in the shooting.  In response, Reid and CW-2 gave no indication to CW-1 that they actually intended to carry out the shooting.

Finally, the Government has continued to investigate the shooting of Jemison and has developed additional information about the identities of the individuals responsible for that shooting.  The Government is not currently aware of any retaliatory act against those individuals that can be connected to Reid.

II.     Discussion

In light of the facts that: (i) Burrell proposed the retaliatory shooting, not Reid; (ii) CW-1 spoke to Reid to encourage him not to engage in the shooting and Reid gave no indication that he actually intended to carry out the shooting; and (iii) the Government is not currently aware of any retaliatory action taken against the people responsible for Jemison's shooting that can be linked to Reid, the Government does not believe that the conversation between Burrell and Reid is material to Reid's sentencing.

In contrast to its relevance to Reid's sentencing, Burrell's proposing the retaliatory shooting is material and strong evidence of Burrell's role as the leader of the violent BMB gang. Accordingly, the Government intends to offer evidence of the conversation, including through CW-1's testimony, at any trial of Burrell.  As a result, given the immateriality of the conversation as to Reid for the reasons stated above, strategic considerations also inform the Government's view that CW-1's testimony at a *Fatico* hearing is not necessary at this stage.

---

member of a rival gang.  The Government previously disclosed this information to counsel for Reid.

### III.   Conclusion

For the reasons stated above, the Government does not seek for the Court to rely on Burrell's conversation with Reid at Reid's sentencing. Because Reid objects to paragraph 23 of the Presentence Report and the portion of paragraph 21 related to Reid's involvement in violence, and for the reasons stated above, the Government believes that it would be appropriate for the Court to find that that information is not material to Reid's sentencing and to not rely on it in sentencing Reid.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:   /s/
Rachel Maimin
Micah W.J. Smith
Hagan Scotten
Jessica Feinstein
Drew Johnson-Skinner
Assistant United States Attorneys
(212) 637-1587

cc: Bryan Konoski, Esq. (by ECF)